Harold BELL, Jr. *v.* STATE of Arkansas

CA CR 99-217                                      7 S.W.3d 343

Court of Appeals of Arkansas
Division III
Opinion delivered December 15, 1999

G.B. *"Bing" Colvin*, Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. *Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate reasonable grounds for doing so.*[1]

Harold Bell, Jr., appeals from the decision of the Drew County Circuit Court finding him guilty of a Class A misdemeanor possession of marijuana, and sentencing him to one year in jail with a fine of $500.00. Appellant asserts for purposes of this appeal that the trial court erred when it denied his motion to suppress the 0.7 grams of marijuana found in his pocket. We reverse and remand.

On June 30, 1997, pursuant to an informant's tip, officers of the Drew County Sheriff's Office went to a pool hall in Wilmar, Arkansas, to investigate a report that drugs and alcohol were being sold there. Upon arrival, Officer Rabb approached Bell, who was sitting on the hood of a car near the front of the yard, and asked for identification. Bell stated that he had no identification. Officer Rabb then told Bell to stand up and asked if he had any weapons. Bell said that he was not armed. After noticing a bulge in Bell's left rear pants pocket, Rabb frisked Bell for weapons. Rabb testified that "[the bulge] felt like a plastic bag with what felt like a vegetable-like substance in the pocket." Raab then removed the contents of the appellant's pocket and discovered that it was marijuana. Bell was charged and convicted of misdemeanor possession of marijuana.

Bell's attorney objected to the scope of the search during trial, where the following exchange occurred:

---

[1] See *Pettigrew v. State*, 64 Ark. App. 339 984 S.W. 2d 72 (1998) (Citing *Sibron v. New York*, 392 U.S. 40 at 41, 20 L.Ed. 2d 917, 88 S.Ct. 1889 (1968)). In the *Sibron* case, Chief Justice Warren, who delivered the opinion for the Court, stated that when an officer is conducting a safety pat-down for weapons, the officer must be able to demonstrate particular facts from which he reasonably inferred that the individual was armed and dangerous.

THE COURT: Okay. Let me ask you, Mr. Colvin, [counsel for appellant] if, is reasonable suspicion or probable cause necessary for a safety pat down?

MR. COLVIN: No, sir. Not a safety pat down.

THE COURT: Okay.

MR. COLVIN: And I'm not complaining about the pat down. I'm complaining about the fact that they went beyond the search once they were, once they were secure in their mind that Harold Bell, Junior did not have a gun. Now when he saw a bulge, he patted him down and felt of that area. Automatically he saw it was a plastic baggie and was not a weapon. He had no authority, whatsoever, to go further.

THE COURT: So you maintain if you touch a bulge, and if the officer in his opinion determines the bulge to be contraband—

MR. COLVIN: That's too bad.

THE COURT: —you can't do anything about it?

MR. COLVIN: No, sir. He cannot do anything about it. Because there are so many things that we as citizens carry in our pockets . . . [a]nd when the police department, law enforcement officers in general satisfy themselves that it is not a weapon when they are doing a search that's solely for a pat down, they must go on.

It is clear from this exchange that Bell's attorney challenged the scope of the frisk. Thus, the argument preserved for purposes of appeal is that Rabb violated the Bell's Fourth Amendment rights, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and *Minnesota v. Dickerson*, 508 U.S. 366 (1993), when Rabb determined that the bulge in his pocket was not a weapon, and did not end the search.

The Fourth Amendment to the Constitution of the United States protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. *Kearse v. State*, 65 Ark. App. 144, 986 S.W.2d 423 (1999); *Leopold v. State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985). Frequently the Fourth Amendment rights of citizens are balanced with the need for police to conduct their duties. *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998). In *Frette*, the supreme court explained that there are three types of encounters between the police and private citizens. The first and least intrusive

encounter is when an officer merely approaches an individual on a street and asks if he is willing to answer a question. *Id*. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the Fourth Amendment. The second police encounter is when the officer may justifiably restrain an individual for a short period of time if he has an "articulable suspicion" that the person has committed or is about to commit a crime. *Id*. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause. *Id*.

In reviewing the denial of a motion to suppress, we make an independent examination based on the totality of the circumstances, and will reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998). A constitutionally valid intrusion into the lives of citizens by police must pass the safeguards contained in the Arkansas Rules of Criminal Procedure. Rule 3.4 of the Arkansas Rules of Criminal Procedure states:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer . . . may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others.[2]

It is clear that the safeguards put into place by the Fourth Amendment, the *Terry* decision, and the Arkansas Rules of Criminal Procedure were disregarded as Rabb searched Bell. In *Dickerson*, the United States Supreme Court addressed what has been dubbed the "Plain Feel Doctrine" and stated:

> Consistent with the Federal Constitution's Fourth Amendment, a police officer may seize nonthreatening contraband detected during a protective pat-down search of a person whom the officer has briefly stopped based on the officer's reasonable conclusion that criminal activity may be afoot with respect to such person, where the officer is justified in believing that the person is armed and

---

[2] Rule 3.4 is the Arkansas standard for applying the ruling in *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968).

presently dangerous to the officer or to others nearby, so long as the officer's search is strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others, because (1) the "plain-view" doctrine — under which police officers may seize an object without a warrant if the officers are lawfully in a position from which they view the object, its incriminating character is immediately apparent, and the officers have a lawful right of access to the object — has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search; (2) if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons, and the warrantless seizure of the object if it is contraband is justified by the realization that resort to a neutral magistrate under such circumstances would often be impractical and would do little to promote the objectives of the Fourth Amendment; and (3) a suspect's privacy interests are not advanced by a categorical rule barring the warrantless seizure of contraband plainly detected through the sense of touch, since (a) the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure, (b) even if it were true that the sense of touch is generally less reliable than the sense of sight, such fact suggests only that officers will less often be able to justify seizures of unseen contraband, (c) the Fourth Amendment's requirement that officers have probable cause to believe that an item is contraband before seizing it insures against excessively speculative seizures, and (d) the seizure of an item whose identity is already known occasions no further invasion of privacy.

*Minnesota v. Dickerson, supra* at 366. In *Dickerson*, the Court suppressed evidence of the respondent's possession of crack cocaine because it was shown that the arresting officer had to manipulate the object in the pocket of the respondent before determining that it was contraband. This manipulation amounted to an illegal search as the identity of the contraband was not apparent.

The present case is analogous to *Dickerson*. Raab was justified in frisking the appellant for weapons. When his initial frisk yielded no weapons, the search should have ended. The holding in *Dickerson* does not permit an officer to search a suspect for contraband under the guise of a weapons search. Because it is clear from the facts that Officer Rabb had to manipulate the bulge in Bell's rear

pocket to determine that it was contraband, this type of search is contrary to the permissible scope outlined in *Dickerson*.

The trial court's determination that the scope of the search did not violate the Fourth Amendment as applied in *Dickerson, supra*, was clearly against the preponderance of the evidence.

Reversed and remanded.

ROBBINS, C.J., and HAYS, S.J., agree.