Donald HUNTER *v.* STATE of Arkansas

CA CR 00-187                                    32 S.W.3d 33

Court of Appeals of Arkansas
Division II
Opinion delivered November 8, 2000

*James Law Firm*, by: *William Owen James* and *Steven R. McNeely*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. Officer Jim Tankersley of the Little Rock Police Department warned appellant to stay off school property. Subsequently, on the afternoon of July 2, 1998, Officer Tankersley saw appellant sitting on the steps of an elementary school. As the officer approached appellant, he saw that appellant had a piece of paper in his left hand. Appellant put his left hand behind his back and no longer had the piece of paper in his hand when Officer Tankersley reached him. Officer Tankersley told appellant to put his hands on the wall and patted him down. In so doing he noticed that a piece of paper was protruding from appellant's waistband. Suspecting that the paper might contain narcotics, the officer removed it from appellant's waistband, manipulated it and discovered that it contained several rock-like objects, and then opened it. The paper was found to contain rocks of cocaine. Appellant's motion to suppress introduction of the cocaine as the fruit of an illegal search was denied, and he was convicted of possession of a controlled substance. From that decision, comes this appeal.

Appellant asserts that the trial court erred in not suppressing the cocaine, arguing that the search was unreasonable or, in the alternative, that the officer exceeded the permissible scope of a protective search by opening the piece of paper he removed from appellant's waistband. We think that the second argument has merit, and we reverse and remand on that basis.

In *Minnesota v. Dickerson*, 508 U.S. 366 (1993), the United States Supreme Court discussed what has come to be called the "plain feel" doctrine, stating that:

> Consistent with the Federal Constitution's Fourth Amendment, a police officer may seize nonthreatening contraband detected during a protective pat-down search of a person whom the officer has briefly stopped based on the officer's reasonable conclusion that criminal activity may be afoot with respect to such person, where the officer is justified in believing that the person is armed and presently dangerous to the officer or to others nearby, so long as the officer's search is strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others, because (1) the "plain-view" doctrine - under which police officers may seize an object without a warrant if the officers are lawfully in a position from which they view the object, its incriminating character is immediately apparent, and the officers have a lawful right of access to the object - has an obvious application by analogy to cases in which an officer discovers contraband

through the sense of touch during an otherwise lawful search; (2) if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons, and the warrantless seizure of the object if it is contraband is justified by the realization that resort to a neutral magistrate under such circumstances would often be impractical and would do little to promote the objectives of the Fourth Amendment; and (3) a suspect's privacy interests are not advanced by a categorical rule barring the warrantless seizure of contraband plainly detected through the sense of touch, since (a) the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure, (b) even if it were true that the sense of touch is generally less reliable than the sense of sight, such fact suggests only that officers will less often be able to justify seizures of unseen contraband, (c) the Fourth Amendment's requirement that officers have probable cause to believe that an item is contraband before seizing it insures against excessively speculative seizures, and (d) the seizure of an item whose identity is already known occasions no further invasion of privacy.

*Dickerson v. Minnesota*, 508 U.S. at 366.

We had occasion to apply the holding in *Dickerson* in *Bell v. State*, 68 Ark. App. 288, 7 S.W.3d 343 (1999). We said that:

In *Dickerson*, the Court suppressed evidence of the respondent's possession of crack cocaine because it was shown that the arresting officer had to manipulate the object in the pocket of the respondent before determining that it was contraband. This manipulation amounted to an illegal search as the identity of the contraband was not apparent.

The present case is analogous to *Dickerson*. [Officer] Raab was justified in frisking the appellant for weapons. When his initial frisk yielded no weapons, the search should have ended. The holding in *Dickerson* does not permit an officer to search a suspect for contraband under the guise of a weapons search. Because it is clear from the facts that Officer Rabb had to manipulate the bulge in Bell's rear pocket to determine that it was contraband, this type of search is contrary to the permissible scope outlined in *Dickerson*.

*Bell v. State*, 68 Ark. App. at 293-94, 7 S.W.3d at 346.

We think that the facts of the present case are indistinguishable from those of *Bell*. Here, the police officer essentially admitted that he was searching for drugs, and the only reasonable view to take of his activities is that he was "search[ing] a suspect for

contraband under the guise of a weapons search." *Id.* at 294, 7 S.W.3d at 346.

██ ██ Finally, we note that the officer testified that he thought a razor blade might be concealed in the paper *underneath* the rocky substance. It is true that a protective frisk is justified when the officer has a reasonable suspicion that the detainee is armed. *Leopold v. State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985). However, the frisk must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer. *Id.; see generally Terry v. Ohio*, 392 U.S. 1 (1968). In a similar case, where it was asserted that a police officer was justified in opening a matchbox found in a detainee's pocket because it might have contained a razor blade, we said that:

> [T]he officer went beyond mere protection. We see nothing in the record to suggest that the matchbox taken from appellant's pocket contained a weapon or posed a risk to the officer's safety. Even if this is a high-crime area, without some evidence other than suspicion or a hunch that a matchbox contains a controlled substance, it is patently inappropriate for an officer, under the guise of maintaining his or others' safety, to take a matchbox and open it. This was not a search incident to arrest. A protective search must be no more invasive than is necessary to ensure the officer's safety; looking inside the matchbox ensured no more safety to the officer.

*Stewart v. State*, 59 Ark. App. 77, 84, 953 S.W.2d 599, 602 (1997), *affirmed on other grounds*, 332 Ark. 138, 964 S.W.2d 793 (1998). We think that it was likewise inappropriate for the officer to open the piece of paper he removed from appellant's waistband under the circumstances of the present case, where there was no evidence to indicate that it might contain a weapon.

Reversed and remanded.

HART and MEADS, JJ, agree.